IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

BEAUMONT DIVISION

PAUL BUTTS                                §

VS.                                       §                    CIVIL ACTION NO. 1:12cv114

MARCUS MARTIN, ET AL.                     §

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Paul Butts, a federal prisoner, brings this lawsuit against Marcus Martin, Derric Wilson, Cheryl Cranmer-Sutton, Ricardo Martinez, Christopher Banks, Michael Harris, Garod Garrison, Theodosia Debricassart, Geraldo Maldonado, and Harrell Watts.

<u>Factual Background</u>

On December 19, 2010, when plaintiff went to the inmate chow hall for dinner, he states he was wearing a gray sweat shirt, gray sweat pants, and a gray knitted cap which he claims he purchased at the commissary. Plaintiff states that as he entered the chow hall, he removed the gray knitted cap and put on his yarmulka. When plaintiff was at the front of the line to pick up his tray, he claims defendant Martinez called him out of the line, pointed to his yarmulka, and asked: "What's that?" Plaintiff states he told defendant Martinez it was his yarmulka, and Martinez responded that "it was not BOP issued." When plaintiff attempted to explain that inmates must supply their own, plaintiff claims he was not allowed to explain and he became frustrated with defendant Martinez. Plaintiff states Martinez asked him for his identification card and told plaintiff that if he was lying about the yarmulka he would spend the night in the SHU. Plaintiff claims he

told defendant Martinez he would rather leave, and he left the chow hall instead of removing his yarmulka.

At lunch the next day, plaintiff had not received his identification card back, so he approached the warden in an effort to explain what had happened. Plaintiff asserts that the warden referred him to the Acting Captain, defendant Cranmer, a Lieutenant. Plaintiff claims defendant Cranmer told him she would check on his identification card, but was not as apologetic as plaintiff would have liked.

Later in the day, Officer Jones came to plaintiff's cell and informed him he was wanted at the Lieutenant's office. Jones also asked plaintiff about a gray yarmulka and plaintiff told him he did not have a gray yarmulka. Jones then requested to search his cell and plaintiff agreed. Plaintiff claims that during the search of his cell only white and black yarmulkas, which are approved religious head wear colors, were found. Plaintiff claims his cell was searched a total of three times and no unauthorized item or contraband was found. Plaintiff claims he was also strip-searched twice. Plaintiff claims the searches were unreasonable and occurred only to cover up defendant Martinez's violations of plaintiff's constitutional rights.

Plaintiff claims he went to the Captain's office and defendant Cranmer was on the phone with the door open. Plaintiff claims defendant Martinez came out of another door and asked him: "Where's the gray yarmulka?" Plaintiff replied that he did not have a gray yarmulka and Martinez asked him: "Where's the yarmulka you had on last night?" Plaintiff claims he replied: "This is the one I had on last night."

After the Chaplain came to the Lieutenant's office, plaintiff claims he was taken to the SHU for lying to staff. Plaintiff claims the move was authorized by defendant Martinez and was witnessed by defendant Cranmer. Plaintiff claims he was placed in the SHU for no other reason than his religious beliefs and because he exercised one of his constitutional rights.

A copy of the incident report was delivered to plaintiff the next day at which time plaintiff claims he gave a simple statement and requested three witnesses. Plaintiff claims, however, that the officer later stated defendant Martinez would not enter the information.

On December 22, 2010, plaintiff appeared before Unit Disciplinary Committee members, defendants Mr. Garrison and Ms. Debricassart. Plaintiff claims he asked about his witnesses and was told he did not request any witnesses. Plaintiff also told them he had made a statement to defendant Banks. Plaintiff claims the committee, however, made no attempt to verify his request for witnesses before finding him guilty of lying or providing a false statement to a staff member. Plaintiff claims the only punishment he received was a loss of commissary privileges for thirty (30) days. Plaintiff contends he remained in the SHU for an additional nine days before being released.

Plaintiff alleges that he appealed the Unit Disciplinary Committee's decision on January 10, 2011. Plaintiff claims his appeal of the disciplinary conviction was denied by defendant Martin on January 26, 2011. Plaintiff then appealed to the Regional Office. In response to his appeal to the Regional Office, plaintiff asserts defendants Maldonado stated: "We have ordered the rehearing of this discipline action. You will be notified by your Unit Team (Defendants Mr. Harris, Mr. Garrison and Ms. Debricassart) when the rehearing will occur." Plaintiff claims the Unit Team decided not to have the rehearing, but "squashed it."

3

Despite the fact that his disciplinary conviction had been overturned, plaintiff appealed again to the Regional Office. After not receiving a timely response, plaintiff appealed to the Central Office, defendant Watts, in Washington, D.C. Plaintiff claims Watts responded late and supported the staff with no actual facts. Plaintiff claims defendants Maldonado and Watts are both in violation of the Due Process Clause and BOP policy.

Plaintiff states "[i]t is well known that he is a Jew, whose beliefs are of Hasidic Judaism, which has a custom and belief of always having the head covered." Plaintiff claims this was the only time he has been denied a meal because of his religious beliefs, and it is the only time he has ever been questioned about his yarmulka.

As a result of the constitutional violations alleged above, plaintiff claims he has suffered anxiety, anguish, humiliation, distress, defamation of character, and nights of sleeplessness. Plaintiff claims that even though the disciplinary conviction was expunged, "the hard copy is still in [his] inmate file. Plaintiff claims this is defamation of character which will follow him for the rest of his prison sentence."

<u>The Defendants' Motion</u>

The defendants have filed a motion to dismiss, or alternatively, a motion for summary judgment. The defendants assert that the court lacks personal jurisdiction over defendant Watts. Additionally, the defendants assert the court may dismiss the claims against Maldonado and Watts, alternatively, for insufficient service of process. The defendants contend plaintiff's allegations concerning the alleged failure to respond to grievances fail to state a claim upon which relief may be granted. The defendants assert that plaintiff has failed to sufficiently allege personal

involvement regarding defendants Harris, Martin, Maldonado, and Watts. Further, the defendants state that plaintiff's allegations fail to state a claim upon which relief may be granted under the amendments asserted in his complaint. The defendants also claim plaintiff fails to state a claim under RLUIPA. The defendants contend plaintiff failed to properly exhaust his administrative remedies regarding his claims. Finally, the defendants claim they are entitled to judgment in their favor under the doctrine of qualified immunity. Accordingly, the defendants contend their motion should be granted.

Standard of Review

*Failure to State a Claim*

A complaint fails to state a claim upon which relief may be granted if the factual allegations are not sufficient to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Dismissal for failure to state a claim is appropriate when the plaintiff has failed to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. 544, 570). Plaintiffs must state enough facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. 544, 570.

In considering whether to dismiss a complaint for failing to state a claim upon which relief may be granted, all factual allegations in the complaint must be taken as true and construed favorably to the plaintiff. *Fernandez-Montes v. Allied Pilots Assoc*., 987 F.2d 278, 284 (5th Cir. 1993). However, conclusory allegations will not suffice to prevent dismissal for failure to state a claim. *Id.*

*Summary Judgment*

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Instone Travel Tech Marine & Offshore v. International Shipping Partners*, 334 F.3d 423, 427 (5th Cir. 2003). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *Instone Travel Tech*, 334 F.3d at 427.

The party seeking summary judgment carries the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). "Before the non-moving party is required to produce evidence in opposition to the motion, the moving party must first satisfy its obligation of demonstrating that there are no factual issues warranting trial." *Commander v. BASF Wyandotte Corp.*, 978 F.2d 924, 927 n.4 (5th Cir. 1992). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. FED.R.CIV.P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003).

Because summary judgment is a final adjudication on the merits, courts must employ the device cautiously. *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991); *Jackson v. Procunier,* 789 F.2d 307 (5th Cir. 1986). In prisoner *pro se* cases, courts must be careful to "guard

against premature truncation of legitimate lawsuits merely because of unskilled presentations." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989) (*quoting Murrell v. Bennett*, 615 F.2d 306, 311 (5th Cir. 1980)).

*Qualified Immunity*

The doctrine of qualified immunity affords protection to officials against individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Qualified immunity shields government officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Fraire v. Arlington*, 957 F.2d 1268, 1273 (5th Cir. 1992), *citing Anderson v Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Federal courts have traditionally used a two-step test to determine whether the defendants are entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Freeman v. Texas Dep't of Criminal Justice*, 369 F.3d 854, 863 (5th Cir. 2004). First, the court must consider whether "the facts alleged show the officer's conduct violated a constitutional right." *Id.* Second, if a constitutional right was violated, the court must decide whether the right was clearly established at the time of the violation. *Id.* "For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held

unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent.'"

*Hope*, 536 U.S. at 739 (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987), *internal citations omitted).* "[A] state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia*, 305 F.3d 314 (5th Cir. 2004). A plaintiff must prove that the officer's actions were objectively unreasonable within that legal context. *See Saucier*, 533 U.S. at 206; *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). The Supreme Court recently held that the rigid structure of *Saucier* is no longer required and that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

Analysis

*Exhaustion*

Section 1997e of the Civil Rights of Institutionalized Persons Act, 42 U.S.C. §§ 1997-1997j, requires prisoners to exhaust administrative remedies before initiating a prison conditions case. The statute provides in pertinent part the following: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

The Federal Bureau of Prisons (BOP), which administers the prison in which plaintiff is incarcerated, has a four-step process for resolving complaints by prisoners. Initially, a prisoner must attempt to informally resolve the complaint with staff. 28 C.F.R. § 542.13(a). If informal attempts are unsuccessful, the prisoner must submit a Request for Administrative Remedy to the Warden. 28 C.F.R. § 542.14. If the prisoner is not satisfied with the warden's response, he may appeal to the Regional Director. 28 C.F.R. 542.15. If still unsatisfied, the prisoner may appeal to the Office of General Counsel. *Id.*

Exhaustion of administrative remedies prior to filing suit is mandatory and is intended to give correctional officials an opportunity to address complaints internally before initiation of a federal suit. *See Porter v. Nussle*, 534 U.S. 516, 525, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes. *Id.*, at 532. A prisoner must exhaust administrative remedies regardless of the type of relief he seeks and regardless of whether the particular type of relief sought is available through the applicable grievance process. *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001).

Grievances should contain sufficient detail to give prison officials fair notice of the problem and an opportunity to address the problem that will later form the basis of a lawsuit. *See Johnson*, 385 F.3d 516-17. "If an inmate claims that a guard acted improperly, we can assume that the administrators responding to the grievance would want to know - and a prisoner could ordinarily be expected to provide - details regarding who was involved and when the incident occurred, or

at least other available information about the incident that would permit an investigation of the matter." *Id.* at 517.

Further, the Supreme Court has explained that prisoners must exhaust available administrative remedies in accordance with all procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 126 S.Ct. 2378, 2382, 2387, 165 L.Ed.2d 368 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.,* at 90-91. The Fifth Circuit has made clear that administrative remedies must be exhausted prior to filing a lawsuit rather than while the action is pending, and district courts have no discretion to waive the PLRA's pre-filing exhaustion requirement. *See Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012).

The competent summary judgment evidence in this case shows that there is no genuine issue of material fact that plaintiff failed to properly exhaust the available grievance procedure by failing to comply with the established rules for submitting his grievances in a procedurally correct manner through all steps of the grievance procedure for each of his claims. The defendants claim plaintiff failed to exhaust his claims against Martinez because an inmate can only raise one issue per grievance in accordance with the rules, and plaintiff's grievance was directed at overturning the decision of the Unit Disciplinary Committee based on an alleged lack of evidence. While plaintiff did exhaust all steps of the grievance procedure for his claims related to the disciplinary proceeding which resulted in the disciplinary conviction being overturned due to a procedural error

regarding notice, plaintiff failed to properly raise his other constitutional claims.  Accordingly, the defendants' motions to dismiss and for summary judgment should be granted.  Assuming, *arguendo,* it is determined that plaintiff exhausted his other claims, the court will address the merits of the claims below.

*Due Process*

Plaintiff claims he was denied due process during the disciplinary process because his witnesses were not called at the hearing.  Plaintiff alleges he requested three witnesses and they were not called because they were not listed.

Prisoners charged with rule violations are entitled to certain due process rights under the Fourteenth Amendment when the disciplinary action may result in a sanction that will impose upon a liberty interest.  State-created liberty interests protected by the Due Process Clause are generally limited to freedom from restraint imposing an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.  *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995).

In *Sandin*, the Court adopted a new and different methodology for determining whether a state has created a protected liberty interest to benefit prison inmates.  *Id*. at 2297-2300.  Rather than focusing on the presence or absence of mandatory statutory or regulatory language, [ See, e.g., *Hewitt v. Helms*, 459 U.S. 460 (1983).] the Supreme Court determined that the reviewing court should consider the nature of the challenged state action and whether it involved such a significant departure from normal prison conditions that the state might have conceivably created a liberty interest.  *Id*. at 2299.

Protected "interests are generally limited to state-created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997). Being placed in disciplinary confinement, losing commissary and property privileges for thirty days, and remaining at the same time earning class are not sanctions which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 115 S. Ct. at 2299; *see also Madison*, 104 F.3d at 768 (concluding that imposing thirty days of commissary and cell restrictions as punishment constitutes mere changes in the conditions of a prisoners confinement and do not implicate due process concerns); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995) ("the mere opportunity to earn good-time credits [does not] constitute a constitutionally cognizable liberty interest sufficient to trigger the protection of the Due Process Clause."), *cert. denied, Luken v. Johnson,* 116 S. Ct. 1690 (1996); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir.) ("An inmate has neither a protectible property nor liberty interest in his custody classification . . . ."), *cert. denied*, 488 U.S. 985 (1988).

The due process that an inmate must receive in a disciplinary hearing is: (1) written notice of the charges against him at least twenty-four hours before the hearing, (2) a written statement of the factfinders as to the evidence relied on and the reasons for the disciplinary action taken, and (3) the opportunity to call witnesses and present documentary evidence in his defense, unless these procedures would create a security risk in the particular case. *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 2978-80, 41 L. Ed. 2d 935 (1974); *Henson v. U.S. Bureau of Prisons*, 213 F.3d 897, 898 (5th Cir. 2000); *Walker v. Navarro County Jail*, 4 F.3d 410, 412 (5th Cir. 1993).

Here, the only punishment plaintiff received as a result of the disciplinary conviction was a loss of commissary privileges for a period of thirty days. Under these circumstances, due process concerns are not implicated and prison officials were not required to afford plaintiff due process at the disciplinary hearing.

Further, in reviewing prison administrative actions, the Court must uphold administrative decisions unless they are arbitrary and capricious. *Stewart v. Thigpen*, 730 F.2d 1002, 1005 (5th Cir. 1984). Federal Courts will not review a disciplinary hearing officer's factual findings *de novo*, instead the courts will only consider whether the decision is supported by "some facts" or by "a modicum of evidence." *Superintendent v. Hill*, 472 U.S. 445, 454-55 (1985); *Gibbs v. King*, 779 F.2d 1040, 1046 (5th Cir. 1986), *cert. denied*, 476 U.S. 1117 (1986). "Prison disciplinary proceedings are overturned only where no evidence in the record supports the decision." *Broussard v. Johnson*, 253 F.3d 874, 877 (5th Cir. 2001). "Determining the believability of the testimonies presented at the hearing is left to the discretion of the hearing officer." *Hudson v. Johnson*, 252 F.3d 534, 537 (5th Cir. 2001). The information provided in a written incident report standing alone can satisfy the "some evidence" standard. *Id*. at 536-537. When a procedural safeguard is overlooked, however, there must be a showing of prejudice as a result of the alleged constitutional violation. *See Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *Simpson v. Ortiz*, 995 F.2d 606, 609 (5th Cir. 1993).

In this case, the disciplinary committee considered the charging officer's written account of the incident, as well as plaintiff's statement, and determined that the greater weight of the evidence was against plaintiff. As set forth above, information provided in a written incident report

standing alone can satisfy the "some evidence" standard; thus, plaintiff has failed to show a constitutional violation occurred. Accordingly, plaintiff's claims fail to state a claim upon which relief may be granted, and the defendants' motion to dismiss and motion for summary judgment should be granted.

*Conditions of Confinement*

The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones. *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). "The Eighth Amendment's prohibition against cruel and unusual punishment imposes minimum requirements on prison officials in the treatment received by and facilities available to prisoners." *Woods v. Edwards*, 51 F.3d 577 (5th Cir. 1995). The Supreme Court noted in *Farmer* that: In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive force against prisoners. The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 823.

A constitutional violation, however, occurs only when two requirements are met. First, there is an objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321 (1991)). Second, under a subjective standard, the court must determine whether the prison official responsible acted with deliberate indifference to inmate

health or safety. *Farmer*, 511 U.S. at 834; see e.g., *Harris*, 31 F.3d at 334-36. The deliberate indifference standard can be appropriately applied to allegations regarding the conditions of confinement. *Woods*, 51 F.3d at 580.

In *Farmer*, the Supreme Court adopted "subjective recklessness as used in the criminal law" as the appropriate definition of deliberate indifference under the Eighth Amendment. *Farmer*, 511 U.S. at 839-40. Under this definition, a prison official cannot be found liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference. *Farmer*, 511 U.S. at 837. A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847.

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). Deliberate indifference encompasses only the unnecessary and wanton infliction of pain repugnant to the conscience of mankind. *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999). To satisfy the exacting deliberate indifference standard, a defendant's conduct must rise "to the level of egregious intentional conduct." *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

The Fifth Circuit has stated that inmates have a constitutional right to receive reasonably adequate food. *George v. King,* 837 F.2d 705 (5th Cir.1987). However, the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measures of life's necessities. *Talib v. Gilley,* 138 F.3d 211, 214 n. 3 (5th Cir.1998). In *Talib,* the Fifth

Circuit stated that missing fifty meals over a five-month period did not constitute the denial of the minimal civilized measures of life's necessities. *Id.*

In the present case, plaintiff claims he was told by Martinez that his yarmulka was not BOP issued and if plaintiff was lying to him by saying it was, plaintiff would spend the night in the SHU. When plaintiff attempted to get back into line for his food tray, Martinez told him he would have to remove the yarmulka or leave the chow hall. Plaintiff chose to leave without eating.

Plaintiff claims he was denied only one meal. Further, plaintiff does not contend that he suffered any physical harm as a result of this circumstance. Accordingly, plaintiff's denial of a meal claim fails to state a claim upon which relief may be granted.

*Retaliation*

Plaintiff admits that he was placed in the SHU for the disciplinary charge of lying to staff only after correctional supervisors had talked to the chaplain concerning the availability of and colors of yarmulkas. However, plaintiff claims he was placed in the SHU for no other reason than his religious beliefs and because he exercised one of his constitutional rights.

To state a valid claim for retaliation "an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident ... would not have occurred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Mere conclusory allegations of retaliation will be insufficient to state a retaliation claim. *See Id*. An inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred. *Jones v. Greninger*, 188

F.3d 322, 325 (5th Cir. 1999). To state a claim of retaliation, an inmate must be prepared to establish a retaliatory motive and causation. *Hart v. Hailstone*, 343 F.3d 762, 765 (5th Cir. 2003).

Plaintiff has not shown that but for a retaliatory motive, the alleged retaliatory action would not have occurred. The defendant had non-retaliatory reasons for the cell searches, the confiscation of contraband, and for writing a disciplinary report against plaintiff for lying to staff regarding the item in question, the enforcement of institutional rules. Plaintiff has failed to show either a retaliatory motive or causation. While plaintiff claims he was placed in SHU for exercising his religious rights, the competent summary judgment evidence shows he was placed in the SHU for the disciplinary charge of lying to an officer regarding telling defendant Martinez the disputed gray yarmulka was purchased at the commissary. Thus, plaintiff's claims fail to state a constitutional violation. Accordingly, the defendants' motion to dismiss and for summary judgment based on qualified immunity should be granted.

*Religious Practices*

Plaintiff claims he was told by Martinez that he would have to remove his yarmulka or leave the chow hall. Plaintiff chose to leave without eating. Plaintiff states he was denied only one meal. Further, plaintiff does not contend that he suffered any physical harm as a result of this circumstance. Plaintiff claims this violated his First Amendment right to the free exercise of religion and his protections under the Religious Land Use and Institutionalized Persons Act.

In 1993, Congress enacted the Religious Freedom Restoration Act ("RFRA"). 42 U.S.C. § 2000bb. That statute was intended to overturn *Employment Div., Dep't of Human Resources of Or. v. Smith*, 494 U.S. 872 (1990), a decision which held that the First Amendment permits

governments to apply neutral generally applicable laws to a religious practice without a showing of a compelling state interest. *See Cutter v. Wilkinson*, 544 U.S. 709, 125 S.Ct. 2113, 2118, 161 L.Ed.2d 1020 (2005); *Caldwell v. Caesar*, 150 F.Supp.2d 50, 55 (D.D.C. 2001). RFRA provides that a government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the government demonstrates that it "is in furtherance of a compelling government interest" and "is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb.

The Supreme Court, in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), held that RFRA was unconstitutional as applied to the states because it was beyond Congress's remedial power to regulate states under Section 5 of the Fourteenth Amendment to the Constitution. *See id.* at 536, 117 S.Ct. 2157. In response to the Supreme Court invalidating RFRA as applied to the states, Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), *see* Pub.L. No. 106-274, 114 Stat. 803 (2000) (codified at 42 U.S.C. § 2000cc et seq.). *See Cutter*, 125 S.Ct. at 2118. The RLUIPA is the "latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens" than that required by the Supreme Court's free exercise clause jurisprudence. *Id.* at 2117-2118. However, since *Boerne*, RFRA remains in effect against the federal government. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 424, 126 S.Ct. 1211, 1217, 163 L.Ed.2d 1017 (2006). Under RFRA, the plaintiff bears the initial burden to establish "the existence of a substantial interference with the right of free exercise." *See Diaz v. Collins*, 114 F.3d 69, 71-72 (5th Cir. 1997).

Whether suing under the Free Exercise Clause, RFRA and RLUIPA, plaintiffs must first raise a material question of fact regarding whether the BOP has placed a "substantial burden" on their ability to practice their religion. *See Weir v. Nix,* 114 F.3d 817, 820 (8th Cir. 1997) (Free Exercise Clause); 42 U.S.C. § 2000bb-1(a) (RFRA); 42 U.S.C. § 2000cc-1(a) (RLUIPA). Once it is determined that a regulation imposes a substantial burden on a prisoner, the review of that burden under the Free Exercise Clause differs from RFRA and RLUIPA. *See, e.g., Cutter,* 544 U.S. 709. The issue, however, is not reached in this case because the court concludes plaintiff has not put forth sufficient facts demonstrating his ability to practice his religion was substantially burdened. See *Patel v. United States Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008)

Plaintiff complains of being denied the ability to attend one meal because he chose to leave the inmate dining hall rather than remove his yarmulka when defendant Martinez accused him of having on improper religious head wear. Here, however, plaintiff has not alleged that Martinez acted pursuant to any prison policy authorizing staff to interfere with the religious freedoms of inmates. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 2404-05, 96 L.Ed. 2d 282 (1987) (holding that prison policies may interfere with the exercise of a constitutional right if they are based on valid penological objectives). Additionally, the intrusion upon plaintiff's religious practice involved in this action was short-term and sporadic, and did not constitute a substantial interference. *Canell v. Lightner*, 143 F.3d 1210, 1214-15 (9th Cir. 1998). A substantial interference with religious rights requires more than just short term or sporadic intrusions. *See Ford v. Bureau of Prisons*, 570 F. App'x 246, 250 (3rd Cir. 2014) (denial of two meals insufficient to show RFRA violation); *Williams v. Bragg*, 537 F. App'x 468, 468-69 (5th Cir. 2013) (occasional

cancellation of Muslim services did not satisfy plaintiff's burden of showing defendants violated his rights under the First Amendment or substantially burdened his right of free exercise in violation of the RFRA); *Omar v. Casterline*, 414 F.Supp.2d 582, 593 (W.D. La. Feb. 8, 2006) (finding refusal to hold three meals until sunset because of Ramadan states only a *de minimis* imposition on free exercise rights). Further, missing one meal does not amount to a constitutional violation. *See Talib*, 138 F.3d at 214 n.3 (expressing doubt whether constitutional violation exists when inmate is deprived of one meal every nine days because the loss is "hardly more than that missed by working citizens over the same period."). Accordingly, plaintiff's allegations fail to state a claim upon which relief may be granted. Therefore, the defendants' motion to dismiss and motion for summary judgment should be granted.

### Lack of Personal Jurisdiction over Harrell Watts

Defendant Harrell Watts is the Administrator of National Inmate Appeals, and he resides in Washington, D.C. Defendant Watts claims the Court lacks personal jurisdiction over him because plaintiff has not shown that he had minimum contacts with this forum. He moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(2).

Plaintiff alleges Watts is the supervisor of the administrative remedy section, and his duties include to protect the constitutional rights of all inmates and intervene on the behalf of inmates when their rights have been violated. For the court to exercise jurisdiction over Watts, plaintiff must show he purposely directed activities to the forum state and that this litigation arose as a result of injuries related to those activities. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Plaintiff's allegations that Watts decided his administrative

appeals outside the state of Texas is not sufficient contact to support a finding of personal jurisdiction. *See Johnson v. Rardin*, 952 F.2d 1401, 1401 (10th Cir.1992) (unpublished). Accordingly, the motion to dismiss for lack of personal jurisdiction should be granted.

*Personal Involvement/Supervisory Liability*

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), the Supreme Court recognized an individual's right to recover damages from federal officials for violation of constitutional rights. Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights. *Id.* Unless the defendants have deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States, however, a plaintiff has no viable claim under *Bivens. See Evans v. Ball,* 168 F.3d 856, 863 n. 10 (5th Cir . 1999) (recognizing that "[a] *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials").

In order to hold an individual liable on a *Bivens* claim, as in § 1983 litigation, the plaintiff must allege that the individual was personally involved in the constitutional violation or whose acts were causally connected to the constitutional violation alleged. *Woods v. Edwards,* 51 F.3d 577, 583 (5th Cir. 1995). Personal involvement is an essential element of a civil rights action. *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir.1983). Vicarious liability does not apply to constitutional claims. *Pierce v. Tex. Dep't of Crim. Justice,* 37 F.3d 1146, 1150 (5th Cir.1994). "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the

Constitution." *Iqbal*, 556 U.S. at 676. Officials acting in supervisory roles, such as the defendants in this action, may be held liable only if: (1) they affirmatively participate in the acts that cause constitutional deprivations; or (2) they implement unconstitutional policies that result in plaintiff's injury. *Gates v. Tex. Dep't of Prot. and Reg. Services*, 537 F.3d 404, 435 (5th Cir. 2008); *Mouille v. City of Live Oak,* 977 F.2d 924, 929 (5th Cir. 1992).

Plaintiff has sued defendants Harris, Martin, Maldonado, and Watts seeking to attach liability due to their supervisory or ranking position within the Bureau of Prisons. However, in civil rights litigation, supervisory officials are not liable for subordinates' actions on any *respondeat superior* or vicarious liability theory. *Stewart v. Murphy*, 174 F.3d 530, 536 (5th Cir. 1999). A supervisor may be held liable if either of the following exists: (1) his personal involvement in the acts causing the constitutional deprivation, or (2) if he implements a policy so deficient that the policy itself acts as a deprivation of constitutional rights. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Neither condition is satisfied in the present action.

Plaintiff has failed to show personal involvement on the part of defendants Harris, Martin, Maldonado, and Watts. Further, plaintiff has failed to show they implemented policy which was inherently in violation of the Constitution. Accordingly, the defendants' motion for summary judgment should be granted as to these defendants.

### Failure to Properly Respond to Grievances

Plaintiff also alleges that the defendants failed to properly investigate and report his claims. Assuming their failure to properly investigate grievances somehow violated internal rules, an alleged violation of prison regulations without more does not give rise to a constitutional violation.

*See Caldwell v. Internal Affairs Office*, 20 F.3d 465, at *1 (5th Cir. 1994) (citing *Hernandez v. Estelle*, 788 F.2d 1154, 1158 (5th Cir. 1986).  Further, the Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so.  *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005).  Accordingly, the defendants' motion to dismiss and motion for summary judgment should be granted, and plaintiff's claims should be dismissed.

*Searches*

Plaintiff complains that his cell was searched looking for the gray yarmulka and he was strip searched on two occasions.  A prisoner has no legitimate expectation of privacy in his prison cell; therefore, the Fourth Amendment's prohibition on unreasonable searches does not restrict searches and seizures in the cell.  *See Hudson v. Palmer,* 468 U.S. 517, 525-26, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Prison officials may search an inmate's cell at any time. *Id.* at 528-29.  Additionally, "[s]trip searches have been repeatedly recognized as an important tool of prison security, and are not per se unconstitutional."  *See McCrary v. Richardson,* 738 F.3d 651, 656 (5th Cir. 2013). "Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration." *Oliver v. Scott,* 276 F.3d 736, 744 (5th Cir.2002).

Plaintiff's allegations fail to state a claim of a Fourth Amendment violation.  Plaintiff has failed to provide competent summary judgment evidence demonstrating that the searches were unnecessary or unjustified.  Accordingly, the defendants' motion to dismiss and motion for summary judgment should be granted.

*Defamation*

Finally, plaintiff claims the retention of this disciplinary report in his file after the disciplinary conviction was expunged constitutes defamation of character. A claim for defamation may be made as a tort under Texas law. *See WFAA–TV, Inc. v. McLemore,* 978 S.W.2d 568, 571 (Tex.1998) (reciting the elements of a defamation claim under Texas law). It is well established, however, that there is no constitutional right to be free from defamation or slander. *See Paul v. Davis,* 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (recognizing that, while a State may protect against injury to reputation by virtue of its tort law, a person's reputation does not implicate a "liberty" or "property" interest of the sort protected by the Due Process Clause). Thus, libel and slander are not cognizable under 42 U.S.C. § 1983 because a defamation claim does not involve the deprivation of any rights, privileges or immunities which are secured by the Constitution or laws of the United States. *See Mowbray v. Cameron County, Tex.,* 274 F.3d 269, 277 (5th Cir. 2001) (allegations of slander by a former prisoner, resulting in public humiliation, scorn, and ridicule, do not state a claim under 42 U.S.C. § 1983)*; Cook v. Houston Post,* 616 F.2d 791, 794 (5th Cir. 1980); *Castillo v. Bowles,* 687 F.Supp. 277, 282 (N.D. Tex. 1988) (dismissing inmate's defamation claim against jail guards because, even if his allegations were true, plaintiff only alleged harm to his reputation, a claim not protected by the Constitution). Thus, plaintiff's claims fail to state a constitutional violation. To the extent plaintiff's complaint may be interpreted as asserting state law claims, this court declines to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c). Accordingly, the defendants' motion to dismiss and motion for summary judgment should be granted and plaintiff's claim should be dismissed.

<u>ORDER</u>

For the reasons set forth above, the defendants' motion to dismiss and motion for summary judgment should be granted, and plaintiff's complaint should be dismissed. A final judgment will be entered in this case in accordance with the magistrate judge's recommendations.

**SIGNED** this the **30** day of **March, 2015.**

Thad Heartfield
United States District Judge